We'll hear argument in Case 16-1215, Lamar, Archer & Cofrin v. Appling. Mr. Garr. Thank you, Mr. Chief Justice, and may it please the Court. Section 523A2A of the Bankruptcy Code prohibits the discharge of debts procured by fraudulent statements, other than a statement respecting the debtor's financial condition. Everyone agrees that financial condition is a term of art used by Congress and in commercial practice to refer to one's overall financial status. Yet Respondent and the Government ask this Court to interpret Section 523, and in particular Congress' use of respecting, to eliminate the meaning of financial condition of a term of art, and essentially to substitute the word finances for it. Can you tell me, Mr. Garr, what is a statement respecting financial condition in addition to a balance sheet and a profit and loss statement? What else would qualify? Sure. Well, our view is that a statement respecting financial condition is a statement that purports to present a picture of one's overall financial situation, and there are several things that could qualify as that.  One would be a balance sheet. Another would be an indication of net wealth or overall income, net worth. Another would be a credit score, such as those that were common in 1926 when Congress passed the statute. Another would be net cash flow. All of these things look to one's overall financial situation, not to just one side of the ledger, an asset or a liability, and present a picture of overall financial status. And again, Respondent's interpretation of respecting essentially eliminates that term as a term of limitation and as a term of art and substitutes the word finances for it. So a statement about any individual input, any individual asset, any individual liability suddenly becomes a statement respecting financial condition. And I think there are three central problems with Respondent's interpretation of respecting. The first is, as I mentioned, that their reading of respecting to mean related to eliminates Congress' decision to use the term of art, financial condition. It would be an odd thing for Congress to say we're going to refer to financial condition, but then essentially eliminate the meaning of that by saying respecting financial condition. And there's no reason why the Court has to interpret respecting to mean related to. It can mean related to, but it can also mean about. And here in context, reading respecting financial condition to mean a statement about financial condition makes perfect sense. To say something is about mean it refers to the subject of the object. Here the object is the statement. Here the subject is financial condition, one's overall financial status. So the fact that their reading of respecting to mean related to would eliminate financial condition as a term of art and a term of limitation is the first reason why this Court can't do that. Kagan, what do you think the difference is between relating to and about? I think, Your Honor, if you go to the dictionary, the dictionary, the definition we provide for about means on the subject of. It refers to the subject. The subject here is financial condition. Relating to is a much broader term of breadth or at least can be used in that way. I mean, this Court famously, Justice Scalia famously said everything is related to everything essentially. I mean, it's a term of great breadth. So there's something intuitive about what you just said, but then I started trying to come up with sentences in my head where I switched the two words, and I honestly couldn't find one where they meant something different. So I'm hoping you can help me come up with those examples where, you know, just give me a sentence where if you have about, it means something different than if you have relating to. Okay. Tell me about Ted Williams' batting average. And here we're using about and we're also using batting average, which is a relative term, versus tell me something relating to his batting average. And I think you could see in that sentence that relating to is a much broader term, going to capture things like, oh, well, he struck out in the seventh inning versus, well, you know, he hit 400. It was an amazing season. Or he almost hit the ball, he was almost just as likely to hit the ball as he was to not hit it. That's a statement about batting average. Nobody would think that if you said, tell me about your GPA, and you said, well, gee, I missed the last question on my last test. That may be, that's certainly a statement relating to your GPA, that missing that question is going to impact, have some relationship to your EPA. But you wouldn't think of that as a statement about your GPA. And that's the way in which Congress was using about respecting here as a preposition to modify financial conditions. Sotomayor, the problem I have with your example is, if I asked you, tell me about your batting average, and you said, I hit 5 out of 10 or I hit 6 out of 10, you would be answering that question. Or you could say, I hit 5 out of 10 when I was in a position to score a run. So the about would be answered in both ways. Well, I think, first of all, you're referring to the subject. Or the respecting would be answered in both ways. Well, you're referring to the subject, the batting average there, and your answer actually provided, looked at both sides of the equation. How many hits he got and how many times a bat he got. So in that sense, that's different than just saying, we're talking about an individual asset. And then I think the sort of, the ambiguity in your question was, did you mean his batting average in the game or his season? And maybe that would be something you would follow up on. But I think that your expression of that is perfectly consistent with our view. It is a problem. You produced an irresistible example, which I can't resist. And therefore, I suspect that the key of your example is the word something, not the word respecting. And when you say tell me about, what usually that means is all about. But let's try it with the word statement, which is in the statute. Make a statement about his batting average. Make a statement respecting his batting average. There, I'm with Justice Kagan. I have a hard time seeing the difference. Well, Your Honor, a statement respecting is still going to refer to about his batting average, the subject of it. Not, I think if you said tell me a statement about his. No, no. Don't tell me. Make a statement about his batting average. Sure. Make a statement respecting his batting average. Now, use statement. And now, there we are. He hit the ball more than he struck out versus he was, that's a statement respecting his batting average versus he was robbed of a hit in the seventh inning by a great catch. That's not a statement respecting. I'll take it under consideration. Mr. Garre, what trouble, what if the debtor makes a statement about a specific asset or liability, but anybody, the reasonable listener would take that to be a statement about or respecting financial situation? So our view, Justice Alito, is this Court should follow what Congress said and say that a statement about a single asset or single liability is not a statement respecting financial condition. It's just not. If you disagree with that, then I think one fallback position the Court could take would be something like what you said. A reasonable person would view that as a statement about one's overall financial situation. Now, this case couldn't be possibly be viewed in that way, because it was clear that this was a statement about only a single asset, and it was a statement in spite of his financial conditions. So the Court couldn't possibly say that the statement in this case about an individual tax refund would be viewed as a reasonable person in this context dealing with a businessman as a statement about. I thought this was a law firm that had a client who was in default. And so the law firm said, we're going to stop representing you. And the client said, oh, don't do that. I'm going to get a tax refund, and it will enable me to pay your bill. Why isn't that a statement respecting the financial position? The law firm, knowing that the client was unable to pay, wasn't paying his bills, and then the client says, I've come up with something that will assure you I will be able to pay this bill. Sure. And this is, you know, can come up in any number of situations dealing with collateral. Whereas, it's not uncommon for someone to know that another person is in dire financial distress, but nevertheless to accept collateral in exchange for property or services as a means of paying for that. That's not a statement about overall financial condition. It's a statement that I have an asset that can be used to pay a debt. And this case was litigated all the way up on the premise that the statement at issue here was a statement about his tax refund, individual asset. They argued below that, in fact, what the law firm was relying upon was its knowledge of his precarious financial condition. And the bankruptcy court rejected that and found that, no, it was relying on his statement about the tax refund. The district court rejected that and found he was relying on the tax refund. And I don't even think they appealed that finding to the Eleventh Circuit. So I think that that's why this case is truly the case about a statement about a single asset, a tax refund, that the debtor in this case lied about. And this paradigm here, the sort of classic collateral paradigm, we're talking about a single asset, couldn't be further removed from the situation that Congress was addressing. And I know not all members of the Court may want to look to that legislative history, but it's sort of the gorilla, the elephant in the room here. And that's when Congress was looking at the situation in 1978, what it was doing is looking at a particular abusive practice by some creditors, which were using written financial statements essentially to dupe applicants for credit into making false statements by simply omitting debts or assets on those statements, and then using that as coercion once they went into bankruptcy. And so Congress passed a specific rule that dealt with written financial statements. Roberts. Mr. Garre, I'm not sure I understand how that helps you even on its own terms, assuming I'd be willing to look at it, of course. But if Congress's concern is that creditors are soliciting information that's incomplete about debts or liabilities, that's just half of the balance sheet that you want us to look at. So Congress appears to have been concerned, to the extent we can tell these things, about misstatements only with respect to one-half of overall financial condition,  right? Well, I don't think that's completely correct, Your Honor, in the sense that the legislative record makes clear that the forms, the financial statements that creditors were using were statements that referred to both liabilities and assets.  Right. No, I understand that. But if the concern is that the misstatements were with respect to omitted liabilities, right? Congress, the creditors in that situation were using forms that represented one's overall financial status, referring to a credit score, net worth. But doesn't that show that an omitted liability, one asset or one debt, can reflect on the overall financial condition? That can be about and relevant to and reflect on the overall financial condition. It certainly can be related to. But the question is what kinds of statements was Congress addressing? Well, Congress obviously thought it could be about, didn't it? I don't think it did. I mean, it said it could be related to. But the situation there is you have creditors who are abusing a false financial statement that included liabilities and assets, debtors who are essentially blameless, and here the situation is the opposite. There is no reason, and Judge Ebell recognized this in the Tenth Circus decision in Jolson. There is no reason for a debtor to be misled or mistaken about an individual asset. And conversely, there is no indication here or in the claim. But if you make a major representation about the absence of an overwhelming debt or the presence of an overwhelming asset, why can't that reflect on, be about your overall financial condition? I own a genuine Vermeer. I think, I mean, I give two answers to that. One, and my first answer is if it's a statement about a single asset, it's just not a statement about overall financial condition. Ever. Categorically. Categorically. Let's say I don't accept that. People who win the lottery go broke, too. So that's my first answer. What's your second answer? The second answer is the one I gave to Justice Alito, which is that if one, if the Court rejected the first answer, one could say that you'd look to whether a reasonable person in context would view the statement as being about one's overall financial situation. It depends on context, doesn't it? The bank says, Schmidt, you are broke. Are you kidding, says Schmidt? I have a genuine Vermeer. Right. I mean, oh, oh, I didn't know that, says the teller. Here's $100,000. You know, what's that if it's not about overall financial? And that would be a hypothetical that I think would call into play this separate rule if the Court wanted to go there. Now, you couldn't say that about the statement in this case. No reasonable person would look in the context here and say that the statement that I have, $100,000 tax refund. Why isn't it exactly like the genuine Vermeer, right? The law firm is chasing the client, and the client says, okay, okay, okay. I'm late in paying. I know I'm terribly late in paying, but I have this tax refund coming. I have the genuine Vermeer almost in my possession, right? Why isn't everyone in the room understanding exactly what that means, which is, okay, I don't have a lot else, but I've got this? I think it's the difference between financial condition and ability to pay, which are two different concepts. And Congress said financial condition. Well, that's a problem for me, too. Maybe you can help me out with that, is the insolvency definitions in the tax code, at least for municipalities. Financial condition is defined as the ability to meet your current financial debts as they come due. That's not the way Congress thought of it. If you look at the definition of insolvency, it refers to financial condition first and the difference between assets and liabilities. Congress also differentiated between assets and liabilities and financial conditions. Other provisions were listed those terms separately in 11 U.S.C. 1103C2 and 1106A3. And there's two additional reasons why I don't think you could read respecting in the broad related to way that Respondents and the government ask you to here. The second, the first one is that it strips financial condition of meaning. The second one is that Congress used the term related to in nearby provisions of the statute in both 1926 and 1978, showing that when Congress meant relating to, the broadest conceivable definition, it said related to, not respecting. And the third reason is just the consequences of Respondents and the government's rule. Their rule would render the baseline rule in Section 523 that debts procured by fraud are not dischargeable, inapplicable to a common fact pattern under Section 523, which is statements made about one's finances to secure credit. Now, the government itself on page 18 of its brief recognizes that that is a common situation, someone making statements about one's finances to obtain credit. And yet the consequence of Respondents and the government's rule is to wipe that out as a basis for discharge. And there's no indication at all that Congress in mind, that Congress had in mind such a dramatic reshifting of the ordinary regime that it has applied for a century in this context, which is a debt procured by fraud is not dischargeable. And this Court relied upon similar considerations, for example, in Marachek v. Spears, where it refused to interpret an exception to the Driver Privacy Protection Act in such a broad manner that it would really strike at the heart of the overlying objective there. And here we have a textually grounded objective that this Court has recognized repeatedly of not releasing for debtors debts procured by fraud. And I think one would look skeptically to a rule that would wipe out the application of that age-old rule in a commonly recurring context, which is statements made about  And that's the case. Ginsburg. May I ask you to clarify something? I may not have understood this correctly, but the statement, don't worry, I am above water. Yeah. I think you said that would need to be in writing. It would. And I think that the fairest way to read that would be a statement about financial condition. And that's quite different than a statement about individual asset. That fact pattern is not coming up in the real world. Justice Ginsburg, no reasonable creditor would rely on a statement that general. But in our view, that is a statement respecting financial condition. How is that significantly different from, don't worry, I have an anticipated tax refund that will enable me to pay your bill? Right. Because that goes to ability to pay, not overall financial condition. And again, it goes to why we ask for collateral and loans commonly. Collateral is not uncommon for people to be in dire financial straits, but yet go to get loans on the basis of collateral. That's sort of the payday situation that the government refers to. Ability to pay is a different concept than financial condition. Congress would have known that. At the time it enacted financial condition language initially, there were State laws that referred to financial condition or ability to pay, as we mentioned earlier. Kagan. Which says more about your financial condition, Mr. Garr? I'm above water. That's one option. Or I have a bank account with a billion dollars in it. Well, I think the I'm above water tells you about your financial condition. The I, because it tells you about your overall financial status. The I have a bank account with a billion dollars in it tells you you have a lot of money. It doesn't tell you anything about your debts. Really rich people sometimes have really big liabilities, as Bertie Madoff. And so that does not give you a sense of overall financial status. Now, again, I think that calls into play Justice Alito's point, that if you disagreed with that, then maybe that is the kind of statement that one could look at and say that that is so astronomically big, a reasonable person would view that as a statement concerning about overall financial situation. That's not the rule we would urge this Court to adopt. We would urge you to follow the text of what Congress said. And, again, it's accepted by everyone that financial condition is a term that refers to overall financial status. That's the easiest way to interpret the statute. It's the way that brings it in line with the problem that Congress sought to address. And, again, I mean, just referring, returning to that problem briefly, there you had a situation of a certain class of creditors that were abusing written financial statements that included assets and liabilities and duping creditors into making false statements. So you had blameworthy creditors and essentially blameless debtors. In that situation, Congress said we should rebalance the scales and not discharge those debts unless they meet certain additional requirements in B. This Court recognized that in Field v. Mann, which makes it a little bit different than the typical legislative history case. The government strenuously argued that the Court should interpret 523A2A in Field in light of that specific problem it was seeking to address. And that problem couldn't be further removed from the situation here where you have a creditor that is entirely blameless and you have a debtor which had no reason to be misled or mistaking about a single individual asset, which is a point that Judge Ebell made in the Jolsing case. So in this case, there is no reason to think that Congress would want to balance the scales any differently, and instead there is every reason to think that Congress would have intended the baseline rule that is always applied in this context to apply to the situation, which is that a debt procured by fraud is not dischargeable. Here, the district court and the bankruptcy court both found that not only did the debtor lie about his tax refund, and I think the Respondent here has tried to rehabilitate the debtor a little bit, but just to be clear, there were findings made that he lied about the amount of the tax fund and whether or not they had actually received the tax fund, both times. The bankruptcy court found that the deceit was obvious. That's at page 60A of the Petition Appendix. So why would Congress have intended to, for a debtor, engage in obvious deceitful conduct against a creditor who is entirely blameless to allow the debtor to discharge that debt? And you think about the consequences of the kind of behavior that that would promote. There is no reason to think that Congress would want to promote that kind of behavior, certainly not when one looks at the other. Ginsburg. Well, and that's an argument that's a reason that the Eleventh Circuit gave and that is advanced by the Respondent here, not so much so by the government. And I think that that's sort of an example of the worst kind of legislative purpose, in the sense that there's certainly no general statement of purpose that Congress intended things to be in writing generally. If Congress really had that objective, Justice Ginsburg, it wouldn't have limited the writing requirements to statements about financial condition. It would have applied it generally. Under their rule, they say that statements about professional qualifications or the values of assets are different. But if Congress was really concerned about having writing, things in writing for evidentiary purposes, it would apply that across the board. So I don't think there's any really traction to the notion that the statute should be interpreted in light of this unstated objective to simply generate more reliable evidence in proceedings. Nor is there any indication that courts have had difficulty making credibility determinations about lies in this context. Those were carefully litigated here. Both courts below heard testimony and they concluded that the Respondent in this case lied about the status of his tax refund and the amount of his tax refund. Given that, this case falls within the baseline rule that that debt is not dischargeable. The only way that Respondents in the government can pull that out of there is to give respecting the broadest conceivable breadth in terms of relating to. And then, once you get to that point, to ask this Court essentially to impose judicial limits on the breadth of that term, because even they, I think, appreciate that if respecting really means related to here, then this is really going to swallow up the whole thing. I mean, they say that the statement has to be about an asset. The Respondent does. But why isn't a statement that I run a hedge fund a statement relating to one's financial condition? Certainly, someone would reasonably view it that way. Why isn't a statement that I graduated first in my class from Harvard Business School a statement respecting financial condition? Certainly, it would be related to that. And they're just asking this Court to draw arbitrary limits in order to cabin the reach of their rule. The government takes a slightly different approach and asks this Court to adopt an ability-to-pay overview, but that's not in the statute either, as I've explained. Ability to pay something by committing an asset to pay a debt is different than one's overall financial status. You can be deeply in debt but still have an asset that you commit to paying a debt. If I could reserve the remainder of my time. Roberts. Thank you, counsel. Mr. Hughes. Thank you, Mr. Chief Justice, and may it please the Court. Petitioner's principal textual argument is to say instead of looking to relating to, they prefer the word about. Now, we reject the premise that there's any substantial legal difference between those two concepts, but even supposing there is a difference, the only example that Petitioner can offer that shows any difference is what we would call a trivial example, something that's a trivial impact on the object. But in the context of this statute, Section 523a2, those sorts of trivial examples structurally cannot exist. And that's because in addition to demonstrate when a plaintiff comes forward with this sort of claim, in addition to identifying the statement that the plaintiff alleges is fraudulent, the plaintiff must also identify why that statement was material to its decision-making, why the plaintiff actually relied on that statement, and why the plaintiff at minimum was justified in doing so. And so those requirements, those necessary requirements of a Section 523a2 claim necessarily and substantially limit the universe of claims that could be within the realm of statements respecting financial condition. And Congress was well aware that it was crafting a statute about fraud. It well knew of all of these other limitations that cabined the universe of the potential kinds of claims. And so that precludes any court from having to consider these sorts of trivial examples. Roberts, let's take Mr. Garre's example of the Harvard Business School graduate. I graduated from Harvard Business School. And someone might reasonably rely on that and take it to be material and significant, but does it relate to financial condition, overall financial condition? Doesn't that term have to mean something? Garre, first to directly answer your question, we think that the clearest test is to ask, does the statement describe what would be a line item on one's balance sheet or income statement? And we think that's a very easy way to understand what the direct relation is. All right. So you'd rule it out on the basis it has to be at least something that would appear on a financial statement. All right. A lot of trivial things appear on financial statements. All right. I have this or that little asset. I own a car. It's a secondhand car. It's not worth a whole lot, but it would appear on a financial statement. That would be enough under your rule? Well, yes, Your Honor. And what deal with that example is the materiality requirement. But again, their rule is if you make that balance sheet. Well, it was reasonably relied on for the purpose of the loan or the services rendered or whatever as collateral. Surely, of course it was. But it doesn't have anything to do with overall financial condition. It just means I own a very bad car. Well, the question would be the reliance area there, Your Honor. And if they're relying on it, that statement, because it says something about your financial condition, I think that would be very clear evidence that it goes to financial condition. But again, their test sets up a rule where if it appears on your balance sheet, they agree to be clin ‑‑ applies in that circumstance. The only question here is if you make that identical statement, not in the context of a balance sheet, but standing alone, does all of a sudden 2A apply? And we think that rule doesn't make any sense, because it's the identical misstatement if you include a misstatement about a worthless car on your balance sheet and you make that identical statement standing alone because the loan officer comes, asks you the next day, by the way, do you have any additional automobiles we should know about? The rule they set up is if you put it on the balance sheet, 2B applies, but if you say it standing alone, all of a sudden 2A applies. That's all form and no substance. The rule, the different ‑‑ the distinction between 2A and 2B should not turn on what the packaging of the misstatement is, if it occurs on a balance sheet or if it occurs independently standing alone. It should look to what the actual substance of the statement is. And when the substance of the statement is one that goes to financial status, then it's a 2B claim because it's a statement that's respecting financial condition. And again, it's clear that that is this case. One need look no further than their amended complaint in the bankruptcy court. This is at the Eleventh Circuit's appendix page A38. And they say what ‑‑ why was the tax information material? And they say, quote, it was material information regarding his and his company's financial status and abilities. Their theory of materiality and reliance was that this statement was material and they relied upon it because it went to his financial status, his ability to pay. That's the identical reliance theory that the bankruptcy court adopted at Petition Appendix 62A. And so what our position is, is that a creditor should not be able to, on the one hand, identify for purposes of establishing reliance and materiality, that the reason, the actual reason they relied on this was because it was a statement about financial condition, while at the same time, in trying to avoid the requirements of 2B, say, no, no, this was something that is not respecting financial condition because it didn't have the proper form of being on a full balance sheet. The reality, when creditor relies for this actual reason, that is what should govern the 2A, 2B analysis, or else, again, you lead to these bizarre results, as I said, it shouldn't matter the truthful packaging. Again, it's a question of whether or not it's true, whether or not it's true. Ginsburg Your understanding shrinks what would once fit under 2A. So what remains under 2A where you don't have a writing requirement? Fisher Senator, a substantial amount remains under 2A, as 34 years of Fourth Circuit practice have shown, and that's because most of the claims, most plaintiffs under Section 523a2 are not lenders. Most plaintiffs have a variety of fraud claims that are entirely outside the loan context. And so just to look at this Court's recent 523a2 cases, two years ago the Court considered Husky International Electronics about fraudulent conveyance, which was a 2A case. Prior to that, the Court looked at Cohen v. De La Cruz, which was a case about a fraudulent scheme to overcharge rents in violation of State law. That was a 2A case.  All of these cases that deal with fraud entirely outside the lending capacity come up as 2A cases. And as we've said, for 34 years our approach has governed in the Fourth Circuit, and 2A is very much alive and well there. We documented dozens of examples of all sorts of frauds. For example, when somebody misrepresents the quality of service or the goods that they're selling, and a whole panoply of issues that have been addressed as 2A cases  In saying that, are you saying that 2A does not really exist anymore with respect to fraud on lenders? No, it still can exist for fraud with lenders, particularly when somebody is making a statement at the time of obtaining debt as to a future promise, and there the fraudulent claim would not be what about their financial condition, but something that they are going to do in the future, perhaps how they use the proceeds of a loan or if they are going to convey ownership interests to the person who is giving them the loan. So there still is a role for 2A in the context of lending. But the context of the statute, Congress was quite clear in creating 2B where it intended to have 2B apply in the main, in the lending capacity. That was because Congress recognized that there was a pattern and practice of abuses in the particular consumer lending space, and that's why Congress felt the need to impose heightened consumer protections in the 2B context. And we think it would be a bizarre result if those protections could be circumvented by a rule such that if the lender asks for everything but overall financial condition, if they just ask for the three most important assets and the three most important debts, all of a sudden those protections would cease to apply, even though the creditor is getting the identical information that they want from getting a holistic balance sheet. So the context of the statute, we think, very clearly indicates why Congress would prefer for an approach that applies to statements about single assets every bit as much as a statement about an overall balance sheet. In addition to that particular purpose, the very example that Congress gave in enacting the statute was a list of debts, only something on the debtor's balance sheet. And Congress had cited to a bankruptcy court decision in Ray Hill where bankruptcy judge Baer very clearly explained that the kind of example that Congress had in mind was not the kind of document from which overall net worth could be obtained. So the very example that Congress enacted or identified for purposes of 2B would not be captured by Petitioner's rule, which I think would be a surprising result. Beyond that, we know that Congress had in mind that 2B would have real effect, and that's because the 1970 Bankruptcy Commission, when it issued its report in 1973, it recommended doing away with this exemption to bankruptcy in its entirety. It found that on the whole it was doing more harm than good to the public. Now, Congress said we're not going to go that far, we're going to strike a compromise, and lenders will be able to exempt debts from discharge in these circumstances. Roberts. And they all read the Bankruptcy Commission report? Well, it was entered into the record, Your Honor. It was entered into the record? Oh, then I'm sure they all read it. Your Honor, though, to be clear, our principal argument rests on the text of the statute, and we think that that resolves this case. We don't submit that going to these other sources are necessary. We think the text is clear. But to the extent that there's any possible ambiguity, we don't believe there is any, but we think all of these other points line up behind it, because along the same line, prior to the 1978 recodification, five circuits had looked at materially identical language, and they all reached the same result. Again, we think the text is the most compelling basis for the Court to decide this case, but the fact that the text, the legislative history, the statutory lineage in the clear purpose all line up the same direction, we think indicates why the Eleventh Circuit was absolutely correct in its decision with this case. Sotomayor, may I go back to the argument Mr. Garre did? He said the Congress was seeking to protect debtors where credit companies were telling them to omit a particular item. How does this rule protect those creditors? Because if the debtor provides the balance sheet in writing, but omits something that the creditor asked, told them it's unimportant, why does the debtor have to omit it? Why does the writing requirement save the debtor? It doesn't, really. It doesn't save the debtor, because he's going to have to omit it. Garre, in 2b, there were two particular protections. One was the writing requirement, and you're correct, the writing requirement would not apply. But the other distinction between 2a, which does the work in that case, is the reasonable reliance requirement. Congress enhanced the standards from justifiable reliance, which typically does not require any affirmative duty to investigate, to reasonable reliance, which would include a duty to investigate, particularly for that example, because they said creditors, because they get consumer reports and other kinds of information from credit rating agencies, they can either know or pretty easily find out if that statement is incomplete. And so the reasonable reliance requirement is what takes care of those cases. Alito, would you respond to Mr. Garre's argument that the statement here concerns ability to pay and not financial condition? Well, it's hard for me to see the distinction between those two, Your Honor, because I think people are concerned about ability to pay statements because they go to financial condition, and vice versa, financial condition statements are relevant to ability to pay. But, again, as the government says, ability to pay is a very important part of this test. We have two separate amicus briefs who identify a separate way to look at financial condition, which is not just balance sheet solvency, but is equitable solvency, which goes to ability to pay. So I think another way to look at this case is a statement that shows ability to pay liquidity is a statement that goes to financial condition. I think it's very hard to disaggregate those two. And this is obviously a statement about ability to pay. And so I think that does confirm that it is a statement respecting financial condition. Now, I think the one distinction that they try to make at page 14 of the yellow brief is that there was a model code that, back in 1926, that looked to statements and tried to suggest that since only statement respecting financial condition was plucked from that model code that means of ability to pay is something different, that means of ability to pay the language in the context of that model code was doing something very different. It was applying to what we today think of payment from insiders. So, for example, if you show up at the jewelry store and you say, well, I don't have the ability to pay, I'm not going to make a representation about my financial condition, but my very wealthy grandmother is going to come tomorrow and pay for this diamond, that is a representation about your means of your ability to pay, which is distinct from your financial condition. So the distinction that they try to make in the yellow brief at page 14 is about those third-party ability of means to pay. When you take those third parties out, I don't think there is much distinction between financial condition and the ability to pay. Ginsburg. What about the argument that you would be putting a burden on small businesses that deal informally? You would be putting a recordkeeping requirement on them for a statement like I've got this tax refund. So, Your Honor, this rule has applied for 34 years in the Fourth Circuit, and neither Petitioner nor Itsamiki have come up with a shred of evidence that there has been any untoward policy effect on small business or any other sector of the economy. And I think we know exactly why, because the NFIB amicus brief cites its own report, and its report at page 8 concludes that bankruptcies are not significant problems for small business. It goes through all the other problems that small businesses have in obtaining payment, and it says bankruptcies are relatively insignificant. And then that same report at page 6 explains why, beyond that, that small businesses stand to benefit more from expansive rules that protect debtors for the very reason that small business owners are more likely to be debtors in bankruptcy cases than the general population. So the NFIB's own evidence suggests that bankruptcies like this do not pose any practical problem on small businesses. Beyond that, that these sorts of rules help small business owners who are more likely to declare bankruptcy. And there's just simply no empirical evidence, even though we know our rules govern for 34 years in the Carolinas, Virginias, and Maryland, and there's been no indication of any sort of overreach of recordkeeping.  Well, you know, we get these arguments a lot. This rule has been there for 30 years and there are no problems. I mean, there are a lot of factors go into whether or not there's no empirical evidence. It's not like there's a daily report about what charges have been made and then the cases have been settled or anything like that. The fact that there haven't been that many reported decisions, which I assume is the basis for your statement it hasn't been a problem, doesn't really tell you all that much in cases like this. Well, I think, Your Honor, the point that we make is a more limited one, which is to say that in the Fourth Circuit, there would be some evidence or some outcry from these very substantial jurisdictions, there would be some indication that there was a problem that came from this rule. So we're using the absence of evidence in the Fourth Circuit to simply say that any view of a policy concern is substantially overblown because there hasn't been any identification of even a single case where there have been imposition of recordkeeping obligations that have been deemed improper or any sort of improper cost on small businesses. And again, I think when we look to the NFIB evidence, that shows exactly why. This is just not a problem that in the aggregate was of concern to small businesses. And rather, Congress was looking at this as consumer protection, how it dealt with consumer lending in the aggregate, and that's why it drafted the broad statute that it did to preclude any kinds of circumvention, because, again, a rule to the contrary would lead to a result where if, you know, Appling had not just said I'm getting a $100,000 refund, but I'm getting a $100,000 refund and, therefore, my head is above water, that all of a sudden 2B would apply. That's just all form over substance, and there's no reason to think that Congress would have actually done that. So we think our rule accords with what actual creditor behavior is, and that should be the rule of decision that Congress was concerned about substances. Additionally, as I've said, our rule captures the only single example that Congress gave, and finally, I think our rule is just plainly required by the clear text of the statute, that the word respecting has a broadening function. There's been no indication that it has anything but a broadening function. And regardless if one thinks it's relating to respecting about all of that broadening function leads to the very same rule that the Eleventh Circuit adopted below, where statements about assets and liabilities necessarily qualify. Sotomayor, could you tell me how you think, why you think your rule is better than the Solicitor General's suggestion? Well, our rule is superior for several reasons. It accomplishes Congress's goal of extending debtor protection to this range of claims, because but for our rule. So how is your rule different from the Solicitor General's? Oh, sorry, sorry. Apart from the Solicitor General's rule, I don't think our approach has any pragmatic difference. I've thought through all of the examples, and I can't think of an example where our rule departs from where the Solicitor General's rule would come out. We think our rule is a bit straightforward and an easy one to apply. But I think in all of these cases, if you think of ability to pay as either a requirement of the rule. So articulate your rule and articulate them for me, so that I have a clear idea of the differences. I know they spoke about context and purpose, and you didn't, so. Yes, Your Honor. Our rule is that any statement that has a direct impact on one's overall financial condition, which Petitioner defines as the balance of assets and liabilities, is a statement respecting financial condition. So we think an easy way to think of this is if it's a statement describing a single line item on a balance sheet or an income statement, that's what qualifies. The government's rule is they say it's, quote, an affirmative representation about a single asset if that representation is offered as evidence of the debtor's ability to pay. So they add that evidence of debtor's ability to pay. We think that's just descriptive of what's going to happen in these cases, rather than something that has to be added as a test. They offer this example of items in commerce. We think our rule would come out the same way with items in commerce, just when one that transaction closes, the representation one's relying upon, that the good is genuine, isn't about something on one's balance sheet. It's about an item that's actually being transmitted in commerce and is coming off one's balance sheet. So at that time of reliance, it's not a balance sheet-style statement. So I don't think there's any practical difference between where we are and where the Solicitor General is. Thank you, Your Honor. Thank you, counsel. Mr. Sandberg. Mr. Chief Justice, and may it please the Court, our view and Respondent's view of the statute leaves the no-discharge rule in fraud cases basically intact. We're just interpreting the scope of the statute's provision that says that statements need to be in writing. And as the colloquy with Respondent's counsel makes clear, although some statements might indeed be insignificant, the dollar bill in my pocket, or by analogy, a single bat of Ted Williams, the statute's only concerned with representations that have actual effect on creditor behavior. And the determination whether a statement is one respecting financial condition or not will make a practical difference only when the creditor has actually relied on it and the reliance was, at a minimum, at least justifiable. And a creditor who's relied on a statement about the value of a single asset, such as here a tax refund, has done so for exactly the same purpose that one would customarily rely on a comprehensive financial statement for, which is to form a judgment about the debtor's creditworthiness for purposes of consummating or not consummating a particular transaction. So a statement respecting financial condition is ultimately about the topic of the statement. It's not about the significance of the statement. So if I make a statement about the status of the project being financed, say I lied to the lender and say that we've broke ground, we're moving on to phase 2, when in fact there's not even a shovel that's hit the dirt yet, that's not a statement respecting financial condition, that's a statement respecting something else. I think it's also worth bearing in mind that this phrase wasn't plucked out of the ether in 1978. It had existed in prior bankruptcy law, dating back to 1926, and it had been interpreted by courts over the years to extend beyond statements about overall financial condition to include statements about particular assets under circumstances where a creditor had relied on that statement and been defrauded. It's also worth bearing in mind that the focus of the legislative process in the 1970s was the commission's report. One of the two bills that was before Congress in the 70s was drafted by the commission. The commission included four legislators of the nine members, and the hearings were all about what had happened before the commission, what the commission was proposing, and it's striking that the commission had proposed to eliminate the fraud exception to discharge entirely for consumer debts, not just for false financial statements, for all consumer debts, and Congress thought that that went too far, but it ultimately preserved a rule that for the particular class of statements that deal with financial condition, the representation would need to be in writing if the creditor sought to render that claim non-dischargeable in the bankruptcy. Alito, you say that a statement respecting the debtor's financial condition encompasses an affirmative representation about a single asset if that representation is offered as evidence of the debtor's ability to pay, right? So it's the intent of the person making the statement, the subjective intent of the person making the statement? No, we see it as an objective test that turns on the context in which the statement is made. So if a creditor hearing that statement in the context in which the statement was made, and remember, we're talking here about oral statements, because it only makes a difference for oral statements, really. So if the creditor says, tell me about your financial condition, and the debtor says, here are the three significant assets I own that you should know about, one of them is a genuine Vermeer. So if the debtor makes the statement not intending it to be evidence of, to be taken as evidence of the debtor's ability to pay, but it is taken in that way by the creditor, that counts, or a reasonable creditor would take it that way? I think a reasonable creditor gets closest to the right approach. It's an objective test. In other areas of the law, this Court has looked to, in discerning the purpose of a statement, has applied an objective test. Such as, for example, whether an out-of-court statement is testimonial or not. And we think that it's important for it to be objective just so that a creditor doesn't come into court when it files its complaint in the adversary proceeding and say, I didn't subjectively rely on it for ability to pay, I relied on something else. Kagan. Mr. Hughes said that there was really no practical difference between your test with the evidence of ability to pay, language in it, and his test without it. Do you disagree with that or agree with that? As I understand Respondent's position, there is no practical difference in how it turns out. We're really the point of our ability to pay language is to get at what we think Congress was trying to do here. And one can agree or disagree as a general matter with its policy choice. But what we think Congress was trying to do was treat statements that go to a debtor's ability to pay differently than other types. So a statement respecting financial condition is one made for the purpose of shedding light on one's financial condition. And why ever would a creditor care about that? Because they want to know if they're going to get their money back. What if it's a false statement about an asset, but it isn't one that would be taken by a reasonable creditor as having any significant bearing on financial condition? Well, I think that that statement probably would not be material or it would not be one that the creditor would have reasonably relied upon. By hypothesis, we're talking about circumstances in which a creditor has come into court and said, I was defrauded. This statement that was made was so significant that I made a different lending decision than I would have. But then they turn to the analysis of statement respecting financial condition. They say, oh, no, this statement wasn't significant enough to go to the debtor's overall financial condition. It just merely affected my decision about whether to consummate the deal. And I think that what Congress was focused on in the 1970s, for better or worse, was to affect real world creditor behavior. And the debtor's intent. Why don't we just want the elements of reasonable reliance, capture almost how can a creditor reasonably rely on a statement that wasn't, that couldn't have been intended as? I think that's right. I don't think we are looking to the debtor's intent under our approach. I think we're looking at what an objective observer coming at things from the creditor's side of the transaction would understand the statement to have been made for. Was it to shed light on the debtor's ability to pay or not? Roberts. We've been focusing on the balance sheet, and that's where your focus has been. Is it an asset? Would it appear on a financial statement? But what about an income statement or a representation about a future stream of income that wouldn't appear on a balance statement, but might appear on an income statement? I understood there to be a little daylight between your position and your colleagues on that. I think our approach would cover those statements, because we think that they are financial representations that go to ability to pay. I'm not sure whether Respondents' Counsel would say that their approach doesn't sweep that in. I think they also have referred to income or debt statements in addition to balance sheets. And in that sense, where the government's approach isn't tethered to any, the formality of the particular document or what would appear on any particular document. It's really about the purpose to which it's being used. Assets or liabilities, that doesn't necessarily represent income, future income streams. That's right. The articulation of the government's test that my colleague read sort of baked into it the premise of this case, which was a statement about a single asset. And so I don't know that this Court would need to think about the entire universe of representations in order to resolve it. But certainly a statement that is not just about an asset or a liability, but is about an income or an expenditure would also fall within our approach. So as to why the Congress may have required statements to be in writing, it's true that it could have said much more in the legislative history than it did. But we know one thing for a fact from the face of the statute, and everyone agrees about it, Congress did require statements to be in writing if they're respecting financial condition in order for the creditor to prevail. Congress could have written in 2A a statement in writing respecting financial condition, but it didn't. It said statement respecting financial condition, and then in 2B it imposed a writing requirement. And we think the only way to give we don't see how under Petitioner's approach it would be sensible to distinguish between statements that go to the whole and statements that go to some or most or one. I'd be happy to entertain any further questions that the Court may have. Roberts. Thank you, counsel. Five minutes, Mr. Garre. Thank you, Mr. Chief Justice. The rule advanced by Respondent and the government would essentially wipe out the application of 523's baseline rule in the consumer finance or simple collateral situation. The government says itself on page 18 of its brief that statements respecting debtor's finances are, of course, common in credit transactions, and under the rule that you've just heard today, any false statements about finances are going to result in a debt that's not dischargeable if they're made orally, which, as the National Federation of Independent Businesses has told this Court, statements about finances are still made orally in common transactions throughout the United States by small businesses and regular folks. And there's just absolutely no indication that Congress intended to put creditors who are blameless in a situation where the debts created by deceitful debtors are going to be entirely discharged under this rule. The Fourth Circuit case law only proves that the Fourth Circuit has invented artificial limits on Respondents related to principle. What that case law doesn't show is all the debts about false statements about individual assets that are being discharged in the Fourth Circuit and putting creditors in a hardship situation that Congress did not intend to be discharged. So I don't think the Fourth Circuit case law really gets them anywhere.  And that's what Congress had in mind. We're talking about debtors and creditors who make a false statement about a single asset in the classic kind of collateral situation where there's no reason to think that the creditor is blameworthy in any way and where the debtor is entirely deceitful. In that situation, there's no evidence, neither in the text or the history, that Congress intended to weigh the balance in favor of debtors there and excuse debtors by discharging debts procured by fraud. The ability to pay concept is just different than financial condition. Collateral on a $1,000 loan, you may be able to use that collateral to pay the loan, but that has no bearing on your overall financial situation. Lots of people who are in dire financial situations make statements about collateral in order to make loans, and a lender might look at the statement about a piece of property as evidence of an ability to pay, but that is not evidence of one's overall financial condition. And one thing, ironically, that I didn't hear from either Respondent or the government today is any real argument based on the text of the statute, either respecting, which they've relied upon up to this point, or financial condition, nor did I hear them dispute that financial condition does refer to one's overall financial status. And I didn't hear any explanation as to how their related-to interpretation of respecting doesn't negate that term as a term of art and term of limitation. The last thing I would say is if this Court does adopt a new test in this area, and there have been, you know, competing versions of possibilities for this Court, we would urge this Court to vacate the decision below and to remand. For one thing, there's a dispute among the parties about exactly why Respondent made a false statement about the tax refund, whether Lamar was relying on its overall financial status. The courts below heard that and rejected Respondent's position that he advanced today, and I urge you to look at pages 60 to 61 of the Petition Appendix and 39 and 40 of the Petition Appendix, where the courts below held that we relied on the statement about his tax refund and not his overall financial condition, and because we relied on a statement about a single asset and not a statement about his overall financial condition, and because that statement was indisputably false, the debt at issue in this case should not be discharged under the command of Congress. If there are no further questions. Roberts. Thank you, counsel. The case is submitted.